**Geovani Montey de la CRUZ, Petitioner,**

v.

**T.R. KINDT, Respondent.**

**No. TH 91–6–C.**

United States District Court, S.D. Indiana, Terre Haute Division.

April 23, 1991.

Geovani Montey de la Cruz, pro se.

Jill E. Zengler, Asst. U.S. Atty., Indianapolis, Ind., for respondent.

## MEMORANDUM

McKINNEY, District Judge.

### BACKGROUND

Petitioner Cruz is a Mariel Cuban who arrived in the United States in 1980. Because of his criminal record before his departure from Cuba he was detained upon arrival in this Country. While detained in the United States Prison at Atlanta, he was prosecuted for and convicted of assault in

---

September 1982 and received a five (5) year sentence. His record of institutional violence, both before and after the conviction, is extensive. The petitioner is, in legal terms, an excludable alien. After completing his sentence for the assault conviction, he was denied immigration parole in 1987 and 1989.

In May 1990 his status was again reviewed by a Cuban review panel.[1] On May 18, 1990 a Notice of Releasability was issued informing the petitioner that:

The [Cuban Review] panel has determined that you are releasable under the criteria established in the Cuban Review Plan. Consequently, efforts to find a suitable sponsorship or placement for you shall continue.

The Notice continued:

It should be clearly understood that you will not be released from custody until a suitable sponsorship or placement has been arranged for you. If you have any information which could assist in obtaining a suitable sponsorship or placement, you should bring it to the attention of the official from the Community Relations Service.

Since the issuance of that Notice the petitioner has been interviewed by two organizations which provide sponsorship for Mariel Cuban detainees. At the time of these interviews personnel from the two organizations were aware that Cruz had been diagnosed by the Public Health Service in October 1981 as having organic personality syndrome, mental retardation with other behavioral symptoms and an antisocial personality disorder. The same report contains a recommendation for further inpatient psychiatric testing.

The petitioner was not selected by either of these organizations because of his history of violence and because of his need for further specialized treatment for his mental disorders which they could not provide.

Following issuance of the Notice of Releasability a second mental health evaluation of the petitioner was made on July 28, 1990 at the Terre Haute institution. This was performed by Dr. Robert A. Redinger, a clinical psychologist.[2] Dr. Redinger's diagnosis of the petitioner included anti-social personality disorder and history of head injury. He recommended that, if released, the petitioner should be placed in a "structured halfway house where his behavior can be monitored on a 24–hour basis." He further noted that if the petitioner was discharged on his own, without community or institutional support, he would likely become a burden to the community and that his history of impulsivity and assaultive behavior renders him potentially dangerous to others.

Based on these mental health evaluations the petitioner has been classified a "PHS–2," a designation indicating his need of in-patient treatment and evaluation before he can be released to a community halfway house. His records also show a need for other, potentially extensive, medical and psychological testing and treatment. It is understandable, therefore, that he is not a suitable candidate for placement in a community-based halfway house.[3] With this background, it was therefore necessary for the Government to channel the petitioner into some appropriate facility or programming which would assist him in preparing for a transition to the community.[4]

1. The Cuban review panel conducts annual reviews of detained Mariel Cubans under guidelines published at 8 C.F.R. § 212.12 to determine their eligibility for immigration parole.

2. The respondent's return refers to Dr. Redinger as a medical doctor. His affidavit, at least, shows only that he is a Ph.D. There is, nonetheless, no basis on which to question Dr. Redinger's expertise or qualifications to make the mental health evaluation which was conducted in July 1990.

3. The petitioner's traverse emphasizes that the basis on which it was concluded that he had a

propensity for violence consists of incidents occurring several years ago and that his recent good behavior has not been acknowledged.

4. "Necessary" here does not mean that the Government had a duty to do this—a question not presented here. Rather, it means that the petitioner was releasable in one sense but entirely unsuitable for release in another sense. In order to get him over the gap, which is what the Government has apparently determined is appropriate, some adjustment, treatment and specialized attention is clearly "necessary."

The Department of Justice maintains or contracts with a facility that will apparently accommodate the petitioner's special needs. This is the Psychiatric Evaluation and Treatment Facility at St. Elizabeth's Hospital Campus in Washington, D.C. ("St. Elizabeth's"). The demand for treatment at this facility outstrips the available space and there is therefore a waiting list. The petitioner is fifth or sixth on this list. It is expected that he will be admitted to an appropriate program at St. Elizabeth's within the next few months and that, upon successful completion of that program, he will be released to a suitable halfway house.

## DISCUSSION

The petitioner claims in his petition merely that he has been approved for release and that he has not been given what was promised, i.e., the limited freedom of immigration parole. This Court has recently thoroughly discussed the authority of the Attorney General with respect to excludable aliens. *See Sanchez v. Kindt*, 752 F.Supp. 1419 (S.D.Ind.1990). The Court found, in part, that the Immigration and Naturalization Act authorizes the indefinite detention of excludable aliens and that review of a decision to detain an excludable alien or grant immigration parole is limited to ascertaining whether the attorney general or his designee has advanced "a facially legitimate and bona fide reason" for his decision. This narrow standard of judicial review has been applied to Mariel Cubans who have been approved for release but who are retained in custody while a suitable sponsor is found. *Fernandez–Roque v. Smith*, 734 F.2d 576, 583 (11th Cir.1984).

Congress has delegated to the Attorney General the authority to "parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). A regulation adopted by the Attorney General provides:

(f) Sponsorship. No detainee may be released on parole until suitable sponsorship or placement has been found for the detainee. The paroled detainee must abide by the parole conditions specified by the Service in relation to his sponsorship or placement. The following sponsorships and placements are suitable:

(1) Placement by the Public Health Service in an approved halfway house or mental health project;

(2) Placement by the Community Relations Service in an approved halfway house or community project....

8 C.F.R. § 212(d)(3)(f).

The background and present condition and needs of the petitioner recited in this Entry amply justify the Attorney General's failure to actually release the petitioner and the imposition of the transition programming as a condition to his actual release. Neither his recent improved behavior nor the fact that he was unaware of many aspects of the government's planning for him render the decision made in his case the least bit unreasonable. Furthermore, the regulations under which his release will eventually be accomplished specifically *prohibit* his release without "suitable sponsorship or placement" and specifically authorize the coordination of this transition with the Public Health Service and the placement of a detainee in an approved halfway house or mental health project.

The petitioner does not challenge the validity of these regulations, nor does there appear to be any rational basis on which he could do so. He does not challenge the particular application of them to him. The notice of releasability which was issued does not purport to and cannot be construed to supersede or negate the requirement of the above-quoted regulation. The notice does not confer on the petitioner an unqualified right to his unconditional release. Nor does it confer a right to a particular timetable for his release in an area of enormous legal, administrative and social complexity. The fact that he has been identified as suitable for placement at St. Elizabeth's is a positive step—and one which the unrefuted evidence suggests is absolutely essential. The existence of a

waiting list and the delay which results in the demand for the specialized services which Mr. Cruz needs is a symptom of the difficulty of implementing, with limited resources, the entire program which assures that the Mariel Cubans are not irrationally detained in this Country despite their status as excludable aliens. Mr. Cruz has received the individual consideration which these would-be immigrants have cried out for since their arrival. That consideration, in his case, shows a violent background, a convicted felon, poor institutional adjustment and significant mental and behavioral disorders—in short, a long-lasting and complex history which will require considerable effort to mold into a person who is suitable for further steps toward integration into a free and law-abiding society. The petitioner's continued detention until these steps can be taken is not irrational under the circumstances presented in this action. He is not entitled to more than he has received and, for that reason, is not entitled to the relief he seeks in this action.